Good morning, your honors. Okori Okorocha for the appellant and plaintiff in the action. May it please the court, this is a case in which summary judgment was granted on employment discrimination claims based on the federal discrimination laws and the California discrimination laws. The case- So in the end, it was just decided on California law, correct? Yes, it was, your honor. All right. The ruling on the motion for summary judgment was devoid of the standard applied in motions for summary judgment. For example, the facts to be viewed in the light of the non-moving party, the district court simply adopted the facts of the moving party in ruling and didn't even mention the actual standard, the McDonnell-Douglas standard, which is to be applied in these cases or discuss any burden shifting. He doesn't have to include that kind of analysis in his order. Well- What he has to find, the key thing that he has to find is that there are no material facts in dispute or alternatively that the evidence is so insubstantial that no reasonable fact writer could find the facts as advocated by one side or the other. And having made either one of those determinations, then conclude that as a matter of law, one side or the other, the moving party here was entitled to summary judgment. Yes, your honor. Technically, that's really all that the rule requires. Well, in summary judgment in employment cases, because of those issues with direct evidence of discrimination being available, if the court says there's no direct evidence of discrimination, then we can go, then we have to look at circumstantial evidence. Well, this court reviews summary judgment de novo. So, didn't in this case, the employer come forward? I mean, your client certainly was in a protected classification. He certainly suffered an adverse employment action. And the employer came up with a non-discriminatory reason for that, i.e., financial reason, et cetera. So, wasn't the issue in what the district judge decided was that you had not overcome that evidence by showing that it was a pretext or by showing that there was other evidence of discrimination? So, I mean, isn't that the issue, regardless of whether the district judge didn't elaborate on this process, isn't that where we are in the case and what this court must determine? Okay. And if we look at that, going from that point, if we take that and look at the fact that the employer who terminated the plaintiff had their own HR person conduct an investigation and find that he was the victim of discrimination, and that is in the record in the court, which would be an admission by the employer, the defendant in the case, the moving party, and the court just adopts the moving party's facts and doesn't discuss any of the records? That's an interesting point. I'm not sure I understand exactly what that means, though. I mean, that somebody in the company felt that this was discrimination. But how does that inform the facts, really? I mean, that's hearsay, that's conclusory. We really don't even know how that person came about that termination. Well, yes, Your Honor. I mean, other than looking at the facts, supposedly, that's what it's claimed. I understand that, Your Honor, but if the person is the HR person who conducts the investigation on behalf of the company and is authorized to speak for the company on those HR issues and the investigation they conducted, and it's their own investigation. Why would the HR person be authorized to speak for the company? I mean, it's a staff job. I mean, they can, you know, your client made recommendations to the boss, Mr. Small, that he didn't like, apparently, about who should be rehired and fired and so on. Apparently, your client testified that he first learned that Mr. Small didn't like him because Mr. Small, he didn't like what his advice was to Mr. Small. And he, because Mr. Small was ignoring his advice about who to fire and who to not fire. I understand that, Your Honor. If I could just clear up one point on the investigation part that the trial court didn't address. The investigation that they conducted and the conclusion that was reached that there was discrimination was their own investigation by the person they appointed to conduct that investigation and make the determination. The ruling by the district court simply recites the facts in the motion for summary judgment and doesn't do any of the actual analysis. Okay, so let's just, let's step away from that for just a moment, Your Honor. Let's start afresh. As Judge Jones said, we are looking at this de novo. So it's just as if the summary judgment motion is in front of us, okay? So let's assume that there's a prima facie case for disparate treatment. You get over that hurdle and so the employer has to come back, as Judge Jones said, with non-discriminatory reason. And Judge Jones said he mentioned one, the downsizing or whatever it was. And there was another one I think he proffered, which was that Mr. Turner was not performing up to snuff, so to speak. So then the burden shifts back to you to come up with some evidence that shows there's a genuine factual dispute. And one, you point to this post-termination investigation. And they object, I think, to the opinion. So what else do you have? Go through it for us, the facts. Take it in the light most favorable to your side. Okay, well, further, the plaintiff did discuss some of the comments that were made with regard to his race. There was clear evidence that there were two other white males hired during this downsizing after the plaintiff was terminated. If in every employment case, the employer could simply say, well, give a conclusion, we were downsizing and he wasn't performing well, we're entitled to summary judgment, then they'd be entitled to summary judgment in just about every case. Here, there was no documentation of this bad performance, this downsizing. These are just conclusions they're making, yet they refer to the facts that came from their side, their HR person, his conclusions. Well, but, so anything else? I mean, what else do you rely on? You say that these grounds were not sufficiently presented, they're not supported. I mean, the company, there was a declaration or affidavit filed by Mr. Small in which he recited about the financial situation. Your client said that he didn't know anything about the finances of the company. He wasn't, that wasn't his job and he didn't have that information. Mr. Small swears that they were able to get an independent contractor in this job for a cheaper amount and that that was important because the company had financial pressures on it. Yes, Your Honor, but they still hired two white males after terminating the African-American male and this analysis that we're doing here. But not in that job. I mean, that. No, no, Your Honor, but it would be ironic to be downsizing and contracting out yet you're hiring full-time employees and hiring more than the, more than just the person that was terminated. And the key issue that I wish the district court would address or had addressed because there's no analysis of the pertinent law in employment discrimination in the order would be what is the significance of their own findings of discrimination when the employer finds discrimination through its own investigation. But we'd have to give that some weight, you would think, since it comes from them. Okay. Would you like to save the rest of your time for rebuttal? Yes, Your Honor. Yeah, a little over four minutes. And we'll hear from, I'm sorry, we'll hear from, I guess it's, I made a mistake when I referred to Turner as the plaintiff. It actually, it's Lawrence as the plaintiff and Turner as the defendant. So we'll hear from counsel for Turner's Outdoorsmen Corporation. Thank you, Your Honors. Mark Goldsmith for defendant Turner's Outdoorsmen. I think that the court, Your Honors, has grasped the issue in this case, which is evidence. There really isn't much of a legal issue. The standard has been around since 1973. McDonald-Buggles has been worked through. The Supreme Court, the various lower courts, and the standard's pretty clear. And it is a de novo review, so in a way it doesn't really matter what the district court said. But the district court did cite a critical case, King v. United Parcel Service. And King v. United Parcel Service itself cites McDonald-Buggles. So certainly the court's decision alone does incorporate, by reference, the McDonald-Buggles standard. But what this case- You assume that district judges know the law? Right. Right, as I said, this is not new law. This is very established law. The shifting of evidence, I mean, the prima facie we produce- Why don't we, just to help us, why don't we assume that he established a prima facie case, and so then we go to the employer's burden to come forward with evidence to show that there was a legitimate non-discriminatory reason for his termination? Correct. And as the court already discussed, I mean, there was a problem with the financials with Turner's. For the six months before and the six months after Mr. Lawrence's termination, 200 people lost their jobs. That's a significant drop, and that's unrefuted. It came in through a declaration of a more recent human resources person. There's no question about it that the company needed to lay off people. Curiously, what was cited by Mr. Lawrence's counsel is not exactly in the record, as far as I know, which is that two Caucasian people were hired, he said, either after or during the time of the layoffs. The evidence that is in the record, at least, is the paragraph five from Mr. Lawrence's own declaration. He doesn't say when these people were hired. I mean, it could have been at any time. He had worked for the company for two and a half years, so we don't know when they were hired. And we're, in regard, we're talking about two people when 200 lost their jobs. So I think that that's pretty much a non-issue. What this case is really all about, and we cut through everything else, is lack of evidence. This is a racial discrimination, racial harassment, and racial retaliation case. There needs to be evidence of something of a racial nature, and there's, this flat out isn't. The so-called harassment, if you want to call it that, are race-neutral comments. Well, I mean, there is the statement that was made in front of the human resources manager, Carla Ferragosia, when Small referred, said to Lawrence, you and Carl, you guys just don't get it. Well, that's the statement that Mr. Lawrence says he heard him say. He says, you know, you guys don't get it. Now, Carl was also an African-American manager, right? According to Plano. Well, I'm asking you. You represent the Plano. I mean, you represent the company. We're not disputing who that person is. I don't think that's an issue. So you don't dispute that Carl was an African-American manager? That's correct. We don't dispute it, but we also don't hear a comment that's racial. I mean, saying you guys can be a million things that are non-racial, it could have meant people in their position, any of my subordinates. It could have meant a full list of them. Well, isn't he entitled to a reasonable inference, all reasonable, taking the evidence that might be most favorable to him? He's a non-moving party. Absolutely, but there's nothing racial in that comment. If they thought it was racial, they could have said something, but there's nothing racial in the comment. You guys don't get it. It's not a racial comment. You people don't get it. It's not a racial comment. You have to say something of a racial nature. It goes on that if I'm not mistaken from what I read, he goes on to say that they went back to the manager's office, the human resource manager's office, and she asked him, I don't believe it. Or she said something like, I don't believe it. Do you want to file a complaint? Well, the evidence that I'm aware of, I'm not sure. Why can't one draw from that a reasonable inference that that was a discriminatory comment? Well, because it simply wasn't. In fact, when Mr. Lawrence talked to Carla in his own words, he said to her, I don't want to be fired because of the garbage with Mr. Small. What does that mean? That certainly doesn't mean racial. If he meant racial, he should have said racial. That's what he's testifying to. I told Carla that I didn't want to be fired for garbage with Mr. Small. Well, you know, who doesn't have garbage with their boss? I don't know. I'm not sure how any reasonable person can attribute that to race. Anything could be racial if you said that. I mean, you can't make the umbrella so large that people can't just speak and say, well, that could be racial. It has to be racial. It has to be something that refers to race. And there's nothing here that does. The rest of that remark by Mr. Small was a discussion, according to the plaintiff, was a discussion in which they were talking about concealed weapon permits, concealed carry weapon permits. And Mr. Small said, yeah, you know, everybody here should move to Orange County and apply for a CCW. And the plaintiff demurred somehow. Not everybody's going to move to Orange County. And Don said, that's the problem. You and Carl, you guys just don't get it. Not being from Southern California, I don't know if there's some – is there any sort of racial thought in there? The problem is just grasping at straws. I mean, you can – Orange County, moving to there. Moving to the suburbs. They're telling you something from that effect. I mean, you know, again, that's speculation. I mean, you can't attribute such a comment that could be attributed to a million different other causes to say, well, that's got to be race. But the point is, even if you do give him that, I'm not sure what the case is. I mean, that's months before his termination. And even if you give him that comment and that's somehow racial, how is that severe and pervasive? It's not just – There may not be much to his – I didn't even think that he had a racial harassment claim. It looked to me like it was nothing more than a disparate treatment claim and a retaliation claim. Well, the problem – That's all I – it looks like there's some mushing and conflating of the various standards into one. This is nothing more than a disparate treatment claim. That's a fair interpretation. And the problem is – Thank you. What? Thank you. For retaliation – there are different responses, though. I will take them separately. For retaliation, his case actually breaks down at the prima facie level because there's absolutely no evidence that Mr. Small knew that anything that Mr. Lawrence said to Carla, even if you say it was racial, which it doesn't appear to be, but even if it was, there's no evidence that Mr. Small knew that he complained to Carla. And so you – that's a huge hurdle. That's the key hurdle. If you don't – if the decision-maker doesn't know that there's a complaint, there can't be retaliation. Getting back to the disparate treatment claim, which we seem to feel is the one here. Right. What about the argument that there is evidence presented that the HR person – and I don't know, was that Carla? No, no, no. That was another HR person – came to the opinion that discrimination had occurred here, and according to the plaintiff, was fired as a result. What's – where does that stand? Well, I agree with what the Court said earlier, that it's hearsay and conclusory, but even more important than that is who is she, when did she make this conclusion, and what are the facts behind it? There are no facts saying what's discrimination, what's harassment, and what might have been retaliation. This is a pure conclusion. This is what it was. But Anna Nguyen, the woman we were talking about, she was an HR person more than a year after Mr. Lawrence was fired, so she never worked with Lawrence. And I believe Mr. Small was also gone by then. And so she comes in a year plus after, says she does an investigation. She herself is then discharged another – at some point later, and she files her own claim. You know, we try to take her deposition, and the attorney – it's all in our papers. Our attorney – the attorney said he produced her, he didn't – he said he didn't represent her, and then all of a sudden he shows up with a declaration of hers. So there's a lot of – She had no first-hand knowledge of the facts because she wasn't there at the time. Right. I mean, anybody could – any disgruntled employee could come and say, yeah, I think you've discriminated against her, that means he's got a case. I mean, without any supporting facts, where she got it from, what happened to this report she allegedly did, there's no report attached. You know, it's the barest conclusion, and frankly, it carries – it can't carry any weight because there's nothing – there's no meat. There's no – So we'd say in summary judgment lingo, that's not more than a scintilla of evidence, correct? Correct, correct. Probably not even admissible. Right. All right. Let me ask you one other – let me follow up one other – one other area that I – that concerns me in the record here. So one of the issues – one of the circumstances that Mr. Small points to in his declaration regarding Lawrence's performance was that he didn't attend a critical meeting, that they were going to plan some sort of inventory strategy, if I remember correctly. Correct. And he says that everybody was supposed to be there, that Mr. Lawrence was supposed to be at this meeting, and Mr. Lawrence didn't show up. So Mr. Lawrence puts forth in his declaration that he didn't – yes, he was at the meeting, yes, he'd been told to be at the meeting, but he told Mr. – Mr. Small that he had other matters to tend to and that he was unable to attend the meeting, and Mr. Small said no problem, or some words to that effect or something to that effect. Now, why doesn't that just show that there's a dispute over what happened? Because of the following. The law is not simply to say I'm a good employee, or I didn't do what they said I did. If that were the case, then it would be a lot easier to win a discrimination case. You could just simply say I was wrongfully charged. But we're only talking about summary judgment here. I mean, it's a whole different – It's a whole different animal when we get to trial. Right. Well, for purposes of summary judgment, though, our reason for termination, the company's reason for termination has to be proven to be unworthy of credence. And simply by saying, no, I disagree, that I – you know, we have a dispute about why you terminated me, that doesn't mean that the company's reason for termination is unworthy of credence. The company has to be shown to have lied about its reason. Right. That's what you're saying. Right. I mean, any employee – employees always say, always say, I was a good employee, I did this, that, and the other thing. And the employer, I don't agree with what my employer says about me. He says I should have been there, I said I shouldn't have been there. That's what employees say in these cases. But they have to do more than that. They have to prove discrimination. So what were the reasons they gave for his termination? Excuse me? What were the reasons they gave for his termination? Well, it's – it's a combination. It's primarily for financial reasons, but, you know, you don't get rid of your best employees typically, even when you have layoffs. So you have to choose who you're going to lay off. And they got a person, Mr. Pomerantz, who was willing to work for less and provide more. He had the other – he's got other talents. So you could kind of combine talents. You could combine costs you might have for construction, given to Pomerantz. Also, Pomerantz was an ex-police officer, so he could carry a gun, which is highly significant in a loss-prevention job. But, you know, there were other problems with Mr. Lawrence. It wasn't just this one meeting. It was a problem getting a hold of him on a cell phone several times. Store directors were saying, where is this guy? He says that he was always available. Well, again, that's just simply – That's just a factual dispute, right? Well, that's not a factual dispute. And you take – and you take the facts and what's most favorable? No, that's not a factual dispute that gets him by summary judgment, because you can't simply say – and there's cases on it in our brief – you can't simply say, I disagree. He didn't say I disagree. He said that he was available. Well, okay. He's disagreeing with what the employer is saying in his mind. He's allowed to tell his version of the story. Yes. But his version of the story doesn't get him through summary judgment, when he has to prove that our version of the story is unworthy of credence. He has to raise a – he can also raise a genuine tribal issue of fact. He has to raise a tribal issue of fact by proving that there's something wrong with our reason. He doesn't have to prove anything. He has to raise a genuine tribal issue of fact. He has to produce evidence, Your Honor. That's correct. He has to produce evidence. But simply – We take it in the light most favorable to him. That's correct. But the point is that even if you do all of that, there's plenty of – there's nothing there that says that the company fired him because of his race. And that's ultimately what he has to have evidence of, not simply that I disagree with the grounds for termination, and that's a tribal fact. He's got to do more than that. And the case law is very clear on that. He has to go one step further. He has to say that the reason they terminated me – I have evidence that the reason they terminated me was because of race. Okay.  You had a little time for rebuttal. Thank you, Your Honor. I just wanted to address one or two minor points. The plaintiff in an employment case, as the Supreme Court has reiterated many times, there won't be direct evidences in the employer saying, yes, we fired him because he's black. So it comes down to the circumstantial evidence. He doesn't have to raise direct evidence. He has to raise the protected status and the adverse employment action. Now, regarding the HR person that the defendants indicate, well, she wasn't there and didn't know these people, that's exactly the point is they hired her to do an independent investigation. She didn't know him. She produced the report, which they claim they don't have. And she, of course, didn't take all the company records with her, but she was the one that handled that matter on their behalf and made these determinations. And being that she was independent and not there or friends with Mr. Lawrence, that would make that part more significant. As far as her not appearing at a deposition and so forth, there's nothing in the record to indicate that they even filed a motion to compel, mentioned one, had a subpoena, not honored, or anything of that nature. And furthermore, it would be their – it's not that the plaintiff has to produce direct evidence. He has to raise the prima facie case. If they're saying there are these non-discriminatory reasons and the plaintiff is rebutting those with their own testimony from their own or the statements of their own HR person, which are not hearsay, they're actually admissions because they're by a party opponent, that evidence is admissible just as much as any other declarations by their employees would be admissible. Submitted. Okay. Thank you. Thank you. Thank you. Appreciate your audience counsel. The matter is submitted. And our last case for oral argument today is planned board of Sunkist Retirement Plan v. Harding and Leggett.
judges: Jones, Pregerson, Paez